UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RYAN, on behalf of herself
individually and as Personal Representative of
the Estate of Patricia "Katie" Williams,

      Plaintiff,

vs.

CITY OF DETROIT, acting through its agency
the Detroit Police Department, Detroit Police
Sergeant BARBARA KOZLOFF, in her
individual capacity, Detroit Police Sergeant
MICHAEL MARTEL, in his individual capacity
and JOHN DOE 1-3, in their individual
capacities,

      Defendants.

Case No.:
Honorable
Magistrate Judge

_____/

William H. Goodman (P14173)
Julie H. Hurwitz (P344720)
Kathryn Bruner James (P71374)
Goodman & Hurwitz, P.C.
*Attorneys for Plaintiff*
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
(313) 567-4827 fax

_____/

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, DEBORAH RYAN, on behalf of herself individually and as

Personal Representative of the Estate of Patricia Williams, deceased, by and through her

attorneys, GOODMAN & HURWITZ, P.C., through William H. Goodman, Julie H. Hurwitz,

and Kathryn Bruner James, and for her Complaint against the above-named Defendants, states as follows:

## PRELIMINARY STATEMENT

1.   This tragic case arises from the needless death of a dedicated, young and beautiful mother and Detroit police officer, who lost her life at the hands of her mentally unbalanced estranged husband, who was also a Detroit police officer and who took his own life at the same time.  Their employer, the City of Detroit, knowingly and consciously chose to shield the husband officer from suspension, investigation and potential criminal prosecution at the expense of protecting the wife from clear and obvious risk and danger.

2.   This action is based on the incredible and highly foreseeable risk of serious danger posed by a person suffering from severe emotional problems who possesses one or more firearms.  That person's status as a police officer should not be used, but in this case was, to diminish the calculation of the danger, created by the toxic interaction of mental illness, domestic abuse and firearms.

3.   This action is also based on the deliberate failure of the Defendant CITY OF DETROIT, acting through its Police Department, to address the severe psychological pathology of some of its officers, due to the mere fact, standing alone, that they are police officers. Therefore its failure and refusal to help those officers, their families and others around them, has gravely increased, contributed to and aggravated the  death and serious injury to the families, colleagues and friends of seriously disturbed Detroit police officers.

4.   This action is, as well, based on the proactive and affirmative acts of the Defendants, despite the Detroit Police Department's refusal to recognize and address the severe emotional and psychological diseases, pathologies and problems of its officers, when these Defendants

2

acted in such a way as to create – that is, to knowingly increase, aggravate and enhance -- the danger posed by one such police officer, such that it became substantially likely that harm would result.

5.   Finally, this action is based on the policy, custom, practice, actions and policies of the Defendants whereby troubled Detroit police officers, who clearly evidence involvement in abusive, criminal, threatening, dangerous and suspicious acts, are treated differently and preferentially over persons who are not police officers.  This differential and preferential treatment is without any rational or reasonable basis.

6.   Therefore, Plaintiff DEBORAH RYAN seeks relief on behalf of herself and as Personal Representative of the Estate of her deceased daughter Patricia Catherine "Katie" Williams [hereinafter, "Katie Williams"], for the Defendants' violation, at all times under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Michigan, including but not limited to the Michigan Wrongful Death Act, MCL 600.2922.

7.   On or about the days leading up to and on or about September 20 through 22, 2009, Defendants engaged in conduct that violated the rights of Plaintiff's decedent and of Plaintiff, as secured by the Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendment to the United States Constitution.

8.   At all times herein, Plaintiff was the mother of Katie Williams, now deceased, whose death on September 22, 2009 was the result of the wrongful and unconstitutional actions of the Defendants, in particular Detroit Police Sergeant MICHAEL MARTELL, and Detroit Police Sergeant BARBARA KOZLOFF acting in their individual capacities, and undertaken pursuant to

the policies customs and practices of the Defendant herein, CITY OF DETROIT which policies, customs and practices were a driving force in the death of Katie Williams.

9.   Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorney's fees and costs, and such other and further relief as the Court deems proper.

## JURISDICTION

10. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.  Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

11.   Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

12.   Plaintiff demands a trial by jury in this action on each and every one of her claims.

## PARTIES

13.   Plaintiff DEBORAH RYAN (hereafter "RYAN") was the mother of Plaintiff's decedent Katie Williams, and is the Personal Representative of her Estate, and, as such, is the proper party to bring this action for the benefit of the Estate.  She is a resident of the City of Canton, Wayne County, Michigan, as was her daughter, Katie Williams.

4

14.   Defendant CITY OF DETROIT (hereafter "DETROIT") is a municipal corporation, so authorized by the laws of the State of Michigan that operates the Detroit Police Department (hereafter "DPD"), as a part of its responsibilities and services.  At all times relevant herein, this Defendant acted under color of regulation, usage, custom and law and pursuant to its policies and practices, as did all the individual Defendants herein.

15.   Defendant Sergeant BARBARA KOZLOFF (hereafter "KOZLOFF") is, and at all times herein was, a police homicide Sergeant in the DPD of Defendant DETROIT, acting under color of regulation, usage, custom and law, acting within the scope of her authority and employment as a police homicide supervisor and pursuant to the policies and practices of Defendant DETROIT, through its agency and unit, the DPD.

16.   Defendant Sergeant MICHAEL MARTEL (hereafter "MARTEL") is, and at all times herein was, a police homicide sergeant in the DPD of Defendant DETROIT, acting under color of regulation, usage, custom and law, acting within the scope of his authority and employment as a police homicide supervisor and pursuant to the policies and practices of Defendant DETROIT/DPD, through its agency and unit, the DPD.

17.   Defendants JOHN DOE 1-3 (hereafter "DOES") are supervisors in the Detroit Police Department.  They are policy makers for the Detroit Police Department and, further, they were the direct and immediate supervisors of Defendants herein, MARTEL and KOZLOFF.  At all relevant times herein, these Defendants acted under color of regulation, usage, custom and law, acting within the scope of their as supervisors, pursuant to the policies and practices of Defendant DETROIT, through its agency and unit, the DPD.

5

## STATEMENT OF FACTS

18.  At all times herein ED WILLIAMS was a DPD police officer, assigned to the Homicide unit, where he had been assigned for at least 10 years.  He had been a Detroit police officer for approximately 15 years.

19.  At all times herein, KATIE WILLIAMS was a Detroit police officer and had been so for approximately 14 years.  In September 2009, she was just returning to active duty after being on light duty for 2 years due to a work related back injury.

20.  Prior to and including September 22, 2009, Plaintiff's Decedent, Katie Williams bad been married to Edward Gordon Williams, II (hereafter "Ed Williams), both Detroit police officers.  They lived together at 3543 Wall St., Canton, Michigan with Katie Williams' son, Kevin, who was eleven years old at the time of her death.

21.  Prior to September 19, 2009, Ed and Katie Williams had been experiencing serious marital problems, largely as a result of Ed Williams' numerous affairs, to the degree that they had agreed to divorce and each sought lawyers to pursue that divorce.

22.  At all times relevant hereto, between September 19 and September 22, 2009, Defendants DETROIT, KOZLOFF and MARTEL and DOE DEFENDANTS were on notice of the Williams' marital conflicts.

23.  Late in the evening of September 19, 2009, Ed Williams assaulted and battered Katie Williams in their marital home, causing her to be physically and visibly injured.

24.  As a result of that assault, in the early morning hours of September 20, 2009, Katie Williams went to the Canton police headquarters to advise the Canton Department of Public Safety that she had been assaulted and to request a police escort to get safely back into her house so she could retrieve some personal items and then leave the house.

6

25.   That night, at the Canton Police Department, she was accompanied by Clifford Lee, also a DPD officer, whom she had been seeing since she and her husband had agreed to institute divorce proceedings.  Mr. Lee told the Canton Police Department desk officer that Katie was concerned that, in the long term, Ed Williams would "do something to her," as he had threatened her in the past.

26.   At this time she advised the Canton police desk officer that her husband was a Detroit police officer and that she was also a Detroit police officer.  Canton police asked her if she wanted to make a report against her husband because, if she did, he would lose his job with Defendant CITY.  The Canton Desk Officer made it clear that, given Katie Williams' visible signs of the violent assault and her statement, there was already sufficient evidence of a crime and that he was legally authorized to initiate a criminal investigation, despite her reluctance to file a report of the incident.

27.   In addition, Katie was fearful that if she officially reported her husband, like herself a Detroit police officer, she would face retaliation by fellow police officers, due to an unspoken but iron clad code, custom and policy of silence within the Detroit Police Department that demanded that police officers never report the misconduct of fellow officers.

28.   Although, at that moment, Katie Williams would not report either her name or her husband's, at the time she walked into the Canton police headquarters at 12:27 a.m., by 9:19 a.m. that same morning, this information had been reported to the Canton Police Department by Clifford Lee, who identified the location, 3543 Wall St., Canton, Michigan, the assailant, Ed Williams, and the victim, Katie Williams.

29.    On September 20, 2009, due to at least two calls for help, the Canton Police performed a SWAT team operation at the Wall Street location and thereafter were aware of the

following documented facts, which were subsequently reported to Defendant DETROIT, in

particular to the DPD,  prior to the morning of September 22, 2009:

a.   On the night of September 19, 2009, Ed Williams had criminally assaulted Katie Williams.  Her injuries from this assault were witnessed and recorded by the Canton Police Department and were reported by Clifford Lee to the Canton PD as a criminal assault and battery;

b.   On the morning of September 20, 2009, Katie Williams, accompanied by her mother, Plaintiff DEBORAH RYAN, went to the Wall St. address to retrieve some of Katie Williams' personal belongings, not expecting Ed Williams to be there.  Ed Williams had deliberately concealed his presence in the house by parking his car some distance from the house and garage.

c.   While inside the house, DEBORAH RYAN reported that Ed Williams was holding and waving an un-holstered handgun while intoxicated in violation of criminal statutory law, "possession of a firearm while intoxicated," MCLA section 750.237.

d.   When the Canton police officers arrived at the Wall Street location, they found that Ed Williams was gone but had left a note in the house that they determined was a suicide note.  It stated:

> "I Edward G. Williams II of sound mind (a little pissed off though), hereby leave all worldly possessions to my mother, Wanda Williams. This is to include all life insurance policies and bank accounts.
> /s/
> 9-20-09
> 6:15 AM"

e.   Katie Williams was with another man, Clifford Lee, another Detroit police officer, and that the relationship appeared to be that of "boyfriend/girlfriend." Further, the Canton Police Lieutenant, Mark Schultz, who communicated this information to Defendant DETROIT, through Defendant MARTEL, also communicated that if Ed Williams learned that Katie was seeing another man, it was very likely that the situation would become extremely dangerous;

f.   Based on these circumstances, the Canton Police Department issued  a statewide "notice of  suspicious behavior" by Ed Williams, pursuant to the Law Enforcement Information Network (hereafter "LEIN"), advising that Ed Williams was missing and endangered and that he was dangerous, as evidenced by the following narrative in the LEIN alert:

> "DPD officer, intox, no known veh reg, after domestic
> situation left a suicide note poss left home with handgun, if
> any contact use caution and call Canton PD."

30.  Thereafter, on the same day, the Canton Police Department verbally advised

Defendants as to all the information set forth in Paragraphs 20 - 29, above.

31.  During the course of the day of September 20, 2009, the following interactions

occurred between Defendant City of Detroit and the Canton Police Department:

  a.   Canton told Defendant MARTEL and the DPD the information set forth in
       Paragraph 29, above;

  b.   MARTEL agreed that the note, prepared by Ed Williams at 6:15 a.m. on
       September 20, 2009, was a suicide note ("exactly");

  c.   MARTEL agreed that it would be very dangerous if Ed Williams already was
       aware or was to become aware of the involvement of Katie Williams and
       Clifford Lee;

  d.   MARTEL agreed that, based on the aforementioned information, there was a
       palpable, serious and realistic danger that the situation could get "really out of
       control," unless such a dire consequence was  proactively prevented by the
       DPD;

  e.   MARTEL advised Canton that, pursuant to orders from his "chain of
       command", all materials were to go directly to the Internal Affairs unit of the
       DPD, which would "handle this whole thing" – i.e. that  Ed Williams'
       colleagues and friends in Homicide, including Defendants MARTEL and
       KOZLOFF, were to be definitively and "completely out of it."

  f.   MARTEL, further, insistently advised Canton that no materials were to be
       sent to DPD Homicide, but rather to DPD Internal Affairs and gave Canton
       the telephone number in Internal Affairs, to which Canton was to 'fax' all the
       written reports concerning the actions of Ed Williams on September 19-20,
       2009.  He further assured the Canton PD that the DPD Internal Affairs
       investigators would take responsibility for preventing Ed Williams from
       seriously injuring anyone ("Hopefully, we can get this thing before it gets
       really out of control").

  g.   The Canton PD advised both MARTEL and Ed Williams that, pursuant to the
       LEIN alert, they would "kick (Ed Williams) into a psychiatric unit" unless he
       saw someone in the DPD who would advise them that he was OK.

32. Based on this representation from Canton to both MARTEL and Ed Williams, and despite the mandated procedure that Homicide was to be "completely out of it," Ed Williams sought out Defendant KOZLOFF, a Homicide supervisor, as a representative of the DPD. His purpose in contacting KOZLOFF, completely understood by her, was that she would advise the Canton PD as to whether or not they should "kick (Ed Williams) into a psychiatric unit."

33. The interview between KOZLOFF and Ed Williams was:

    a. Very brief, lasting probably less than 15 minutes;

    b. Unprofessional, inappropriate and likely to lead to incorrect decisions based on poor judgment, in that:

        i. KOZLOFF was not trained to assess a police officer's mental fitness for duty and thus incapable of determining whether "all is well" with Ed Williams, from a mental health, counseling, psychiatric or personal perspective;

        ii. Although she was his supervisor, KOZLOFF was incapable of objectivity and independent judgment in making decisions as to whether Ed Williams should be taken off active duty, be arrested, have his firearms confiscated or be seen immediately by a psychiatric professional, due to her personal relationship with him, as a friend and colleague;

        iii. KOZLOFF, as a member of the homicide division, was supposed to have stayed "completely out of it," and should have turned Ed Williams over to Internal Affairs; and

        iv. Despite the fact that it was obvious that there was probable cause to believe Ed Williams had recently violated criminal laws of the State of Michigan, that he was very psychologically disturbed and, indeed suicidal, KOZLOFF deliberately refused to arrest him, remove him from duty, require him to turn in his weapons and order him to be examined by a psychologist or psychiatrist.

34. Based upon the aforementioned, woefully inadequate and incompetent interview, Defendant KOZLOFF deliberately and affirmatively took action which created a foreseeable and highly dangerous risk of harm to Plaintiff's decedent by communicating to Canton PD that "all is well" with Ed Williams, as follows:

    a.   That he was both fit for duty and perfectly able and safe to have and use firearms;

    b.   That he did not require psychological treatment or care before he was allowed to possess and use firearms;

    c.   That, since the note was found, Ed Williams was not suicidal regardless of the fact that both Lt. Schultz of the Canton PD and Defendant MARTEL had "absolutely" interpreted it as a suicide note – i.e. KOZLOFF represented to the Canton P.D. that it was <u>not</u> a suicide note nor did it give rise to any suggestion of improper or violent behavior on the part of Ed Williams; and

    d.   KOZLOFF, speaking on behalf of the DPD advised that the DPD would "really appreciate it" if the Canton PD would cancel the LEIN alert.

35.  During this communication between KOZLOFF and Lt. Schultz of Canton, KOZLOFF deliberately failed to advise the Canton PD that she worked at DPD Homicide, knowing that Canton had already been instructed that Homicide was to be "completely out of" the Ed Williams investigation and that Internal Affairs was to "handle this whole thing." As such, she deliberately concealed the impropriety of her communication with Lt. Schultz from him.

36.  As a result of this improper and inappropriate proactive and affirmative action and communication by KOZLOFF, the LEIN alert was cancelled and the Canton PD took no further interest in the matter by way of investigation or other law enforcement action until more than 36 hours later when Ed and Katie Williams were both already dead—Katie having been murdered by Ed and Ed having then committed suicide.

37.  At all times herein, KOZLOFF acted deliberately to affirmatively intervene in the Ed Williams case with the Canton PD, to stop its investigation and law enforcement actions despite her knowledge that her supervisors had taken all Homicide officers and supervisors, including herself, off the case and that she was not authorized to intervene.

38.  At all times herein, KOZLOFF acted deliberately to affirmatively intervene in the Ed Williams case with the Canton PD to stop its investigation and law enforcement actions, despite:

    a.  The fact that she did not know the details of the Canton PD investigation, including the crucial information set forth in Paragraphs 20 – 29 herein above, because MARTEL, through his affirmative intervention with Canton that instructed Canton not to send reports to Homicide, prevented her from learning the crucial information regarding the extremely threatening and criminal nature of Ed Williams' behavior on that day and/or the previous evening and thereby rendered her not only incompetent to make a judgment about Ed Williams, but ill informed as well; or, in the alternative,

    b.  That she somehow did have the aforementioned crucial information regarding Ed Williams, yet deliberately and totally disregarded it.

37.  At all times herein, these Defendants, a law enforcement agency and law enforcement officers, deliberately refused and failed to address the known serious threat of harm that Ed Williams posed to his wife and others, including himself, during the time period between September 19 and 22, as evidenced by their knowledge of his suicidal and violent conduct and the fact that there was probable cause to believe that he had was guilty of at least two dangerous criminal acts.

38.  In refusing and failing to adequately respond to the threat posed by Ed Williams, as evidenced by his  psychological problems and criminal and violent actions,  Defendants treated him differently and preferentially than they would have, had he not been a Detroit Police officer, acting in a threatening and dangerous manner toward a wife, family member or himself. Defendants' intent and purpose to respond to allegations of police officer Ed Williams' criminal and dangerous behavior more preferentially than to non-police officer domestic abusers is evidenced by the following, among others:

    a.  Defendants' active intervention in favor of Ed Williams, with another law enforcement agency;

    b.   The refusal of the Defendants to objectively, neutrally and fairly investigate the situation and conflict between Ed and Katie Williams;

    c.   The Defendants' refusal to communicate with, talk to or interview the domestic abuse victim, Katie Williams, notwithstanding their policy that required them to do so, had the victim been the spouse of anyone other than a police officer;

    d.   The refusal of the Defendants to arrest or detain Ed Williams, despite clear evidence that established probable cause that he had violated the law and despite clear policy that required the Defendants to arrest anyone whom they had probable cause to believe had committed any crime, including a misdemeanor, that involved domestic violence, which policy was waived and/or disregarded when the perpetrator was a police officer, such as and in particular Ed Williams;

    e.   Actively asserting to another law enforcement agency that Ed Williams was capable, competent and trustworthy to possess firearms;

    f.   Interviewing Ed Williams in a superficial and non probing way that accepted, without question, his statements and assertions; and

    g.   Making a medical and psychological diagnosis regarding Ed Williams' mental health without the benefit of professional training, advice, consultation or participation.

39.    As such, these Defendants treated Ed Williams' potential victim, Katie Williams, differently, more adversely and more injuriously than they would have treated those potential victims of someone who was not a police officer.  Defendants' intent and purpose to respond to allegations of police officer Ed Williams' criminal and dangerous behavior *vis-à-vis* Katie Williams more adversely and injuriously to Katie Williams than to non-police officer domestic abuse victims is evidenced by those circumstances set forth in Paragraphs 38(a) – (g) above.

40.    At no time was there any reasonable and/or rational basis for the differential treatment set forth above and summarized in Paragraphs 38 and 39.

41.    The actions of the Defendants were as a result of the customs, policies and practices of Defendants DETROIT, and DOES herein, including but not limited to the following:

13

a.   Failure to train, supervise and discipline its officers and supervisors to respond to situations of  both real and potential domestic violence by DPD officers as vigorously, firmly, aggressively and promptly as they respond to such situations where the domestic violence suspect is not a police officer;

b.   Routinely accept and condone their supervisors' and officers' regular practice and custom of responding to complaints, accusations and/or charges of domestic violence or other wrongdoing against other police officers with favoritism, cronyism and/or partiality, rather than with professionalism, objectivity and responsibility;

c.   Failure to train, supervise and discipline DPD supervisors so that they will recognize and appropriately refer officers whom they supervise and who exhibit serious psychological problems to Internal Affairs for psychological evaluation and counseling and require it when appropriate;

d.   Failure to train, supervise and discipline DPD supervisors so that they will recognize that a police officer with serious psychological poses a serious threat to the general public, his/her colleagues and especially his/her spouse, neighbors, family members and self;

e.   Defendants' had no guidelines, policy, practices, customs  or investigative techniques that required Detroit police officers, investigating claims of domestic violence or abuse by Detroit police officers, to interview, inquire of or ask the officer's domestic violence victim/spouse for her information regarding the events in question.

e.   Despite being on notice that there was an epidemic of suicidal pathology amongst DPD officers at the time of these incidents, these Defendants routinely ignored their obligation to have in place a mandatory requirement of psychological evaluation and counseling of officers who exhibit any signs of such problems and the immediate confiscation of their firearms, pending the completion of psychiatric examination and treatment;

f.   Routine failure to have clear mandatory guidelines, mechanisms, protocols, resources or procedures to be used by DPD officers and supervisors when they are put on notice of a police officer who poses a serious threat to the general public, his/her colleagues and especially his/her spouse, neighbors, family members, and self;

g.   Failure to have clear mandatory guidelines, mechanisms, protocols, resources and procedures to be used by DPD officers and supervisors when they are put on notice of a police officer who exhibit serious psychological symptoms; and

h.   Tolerance, ratification and authorization of  an unspoken code and policy of silence within the Detroit Police Department that demanded that police

14

officers not report misconduct, criminal activity, or potential mental illness by other fellow officers.

42.     The aforementioned customs, policies and practices were likely to result in the violations of rights of others secured under the Fifth and Fourteenth Amendments to the United States Constitution, including Plaintiff and Plaintiff's decedent Katie Williams.

43.     The aforementioned customs, policies and practices were a driving force and proximate cause of in the actions of the Defendants that resulted in the violations of the rights of others, in particular the Plaintiff and Plaintiff's decedent herein, secured under the Fifth and Fourteenth Amendments to the United States Constitution.

44.     As a result of the actions of the Defendants aforementioned customs, policies and practices, on September 22, 2009, Ed Williams tragically shot and killed Katie Williams and then shot and killed himself.

## CLAIMS

### COUNT I - FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – DENIAL OF DUE PROCESS
(STATE CREATED DANGER)

45.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 44 as if fully set forth herein.

46.     In their actions, set forth above, the Defendants MARTEL, KOZLOFF, and DOES violated the Plaintiff's decedent's clearly established and fundamental right under the substantive due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, i.e. decedent's rights to personal security, bodily integrity and life. These violations are and were all of such magnitude of liberty deprivation that these abuses that Defendants have inflicted upon Plaintiff's decedent stripped from her the very essence of her personhood.

15

47.     Defendants' violations of  the aforementioned clearly established rights, were characterized by the following:

    a.   They caused harm that was foreseeable and direct;

    b.   They acted with a degree of culpability that shocks the conscience;

    c.   They undertook actions that were a cause of the death of Plaintiff's decedent, Katie Williams, notwithstanding that a relationship existed between these Defendants and Katie Williams such that she was a foreseeable victim of the Defendants' acts;

    d.   Katie Williams was a member of a discrete class of persons subjected to the harm caused by the Defendant's actions, rather than a member of the public in general; and

    e.   Defendants, in particular KOZLOFF and MARTEL, used their authority in a way that  they affirmatively and proactively acted to create a grave danger to Katie Williams and/or that rendered her more vulnerable to danger than had these Defendants not acted at all.

48.     As a direct and proximate result of the acts and conduct of the Defendants, Plaintiff herein suffered the following injuries and damages:

    a.   As to the estate of Patricia ("Katie") Williams:

        i.   Physical injury as a result of being shot with a handgun, resulting in death;

        ii.   Conscious physical and emotional pain, suffering, anguish, distress and fear; and

        iii.  Loss of earning capacity.

    b.   As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

        i.   Loss of love;

        ii.   Emotional distress and anguish;

        iii.  Loss of society and companionship;

        iv.  Loss of services;

        v.   Loss of emotional support; and

16

vi. Loss of past and future economic support.

## COUNT II - SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983– DENIAL OF EQUAL PROTECTION

49.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 48 as if fully set forth herein.

50.    At all times herein the Defendants violated Plaintiff's decedent's rights to the equal protection of the law as secured by the Fourteenth Amendment to the United States Constitution, in that she was a victim of domestic violence, inflicted by a Detroit Police Officer, as distinguished from being a victim of domestic violence inflicted by a person other than a police officer.

51.    Defendants encountered, responded to and treated Plaintiff's decedent differently, adversely and more injuriously due to her status as a victim of domestic violence inflicted by a Detroit Police Officer than they would have encountered, responded to and treated her, had she been a victim of domestic violence, inflicted by a person other than a police officer.

52.    These Defendants had no rational or reasonable basis for treating Plaintiff's decedent differently by virtue of the fact that her assailant or potential assailant was a police officer, than the victims of assailants or potential assailants who are not police officers.

53.    As a direct and proximate result of the acts and conduct of the Defendants, Plaintiff herein suffered the following injuries and damages:

   a.   As to the estate of Patricia ("Katie") Williams:

      i.   Physical injury as a result of being shot with a handgun, resulting in death;

      ii.  Conscious physical and emotional pain, suffering, anguish, distress and fear; and

       iii.  Loss of earning capacity.

    b.  As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

       i.  Loss of love;

       ii.  Emotional distress and anguish;

       iii.  Loss of society and companionship;

       iv.  Loss of services;

       v.  Loss of emotional support; and

       vi.  Loss of past and future economic support.

**COUNT III - THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – *MONELL* CLAIM**
**DEFENDANTS DETROIT and DOES**

54.  Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53, as if fully set forth herein.

55.  At all times herein the Defendant DETROIT had established, promulgated, implemented and maintained customs, policies and/or practices, as set forth in Paragraphs 41 – 43 above.

56.  Defendant DETROIT was on actual notice that each of the aforementioned policies set forth above, were highly likely and probable to proximately cause violations of the Constitutional rights of members of the public, including Plaintiff's decedent, Katie Williams.

57.  As a direct and proximate result of the acts and conduct of the Defendants, Plaintiff herein suffered the following injuries and damages:

    a.  As to the estate of Patricia ("Katie") Williams:

       i.  Physical injury as a result of being shot with a handgun, resulting in death;

18

    ii.    Conscious physical and emotional pain, suffering, anguish, distress and fear; and

    iii.    Loss of earning capacity.

b.    As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

    i.    Loss of love;

    ii.    Emotional distress and anguish;

    iii.    Loss of society and companionship;

    iv.    Loss of services;

    v.    Loss of emotional support; and

    vi.    Loss of past and future economic support.

<u>**COUNT IV – STATE LAW – GROSS NEGLIGENCE**</u>
<u>**DEFENDANTS KOZLOFF, MARTEL and DOES**</u>

58.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57, as if fully set forth herein.

59.    At all times herein, Defendants KOZLOFF, MARTEL and DOES acted in a manner so reckless, as set forth above in Paragraphs 20 – 39 herein above, as to demonstrate substantial lack of concern as to whether injury or death would occur and, as such, are not protected by governmental immunity pursuant to MCLA 691.1407.

60.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff herein suffered the following injuries and damages:

a.    As to the estate of Patricia ("Katie") Williams:

    i.    Physical injury as a result of being shot with a handgun, resulting in death;

    ii.    Conscious physical and emotional pain, suffering, anguish, distress and fear; and

    iii.    Loss of earning capacity.

     b.  As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

       i.  Loss of love;

       ii.  Emotional distress and anguish;

       iii.  Loss of society and companionship;

       iv.  Loss of services;

       v.  Loss of emotional support; and

       vi.  Loss of past and future economic support.

## COUNT V - FIFTH CLAIM FOR RELIEF
## WRONGFUL DEATH

61.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 60 as if fully set forth herein.

62.    This action is brought pursuant to the Michigan Wrongful Death Act, MCL 600.2922, *et seq.* and damages are sought on behalf of the Estate of Patricia ("Katie") Williams and on behalf of those family members who enjoyed a close personal relationship with her and who, due to her death, have been deprived of his love, society, companionship and affection, in particular her son, mother and siblings, to wit:

     a.  Loss of love;

     b.  Emotional distress and anguish;

     c.  Loss of society and companionship;

     d.  Loss of services;

     e.  Loss of emotional support; and

     f.  Loss of past and future economic support.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands the following relief, jointly and severally, against all

Defendants for the violation of her rights as set forth herein, First through Fifth Claims for

Relief:

a.   A declaration that Defendants violated the federal and state law rights of Plaintiff;

b.   Whatever amount the jury may determine for compensatory damages for physical, emotional, and economic injuries suffered by Plaintiff's decedent – past, present and future – by reason of Defendants' unlawful, unconstitutional and unjustified conduct, in an amount that is fair, just and reasonable and in conformity with the evidence at trial;

c.   Whatever amount the jury may determine for compensatory damages for the loss of consortium, emotional suffering, loss of society and companionship and loss of services suffered by Plaintiff's decedent's heirs, under the Michigan Wrongful Death Act, MCL §600.2922, *et seq*;

d.   Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

e.   Attorneys fees, as allowed, pursuant to 42 U.S.C. §1988 and MCL 37.1606;

f.   The costs, interest and disbursements of this action; and

g.   Such other and further legal and/or equitable relief as appears just and proper.

Respectfully submitted,

*s/William H. Goodman*_____
Goodman & Hurwitz, P.C.
*Attorneys for Plaintiff*
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
(P14137)

Dated:  March 7, 2011

21

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, DEBORAH RYAN as Personal Representative of the Estate of

Patricia "Katie" Williams, deceased, by and through her attorneys, GOODMAN & HURWITZ,

P.C. and hereby demands a trial by jury on all issues of this cause.

Respectfully submitted,

*s/William H. Goodman*
Goodman & Hurwitz, P.C.
*Attorneys for Plaintiff*
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
(P14137)

Dated:   March 7, 2011