UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RYAN,

       Plaintiff,

                                       Case No. 11-CV-10900

v.

                                       HON. MARK A. GOLDSMITH

CITY OF DETROIT, et al.,

       Defendants.

_____/

**OPINION AND ORDER
DENYING DEFENDANTS FALK AND SCHULTZ'S MOTION FOR SUMMARY
JUDGMENT (Dkt. 122) WITHOUT PREJUDICE AND GRANTING IN PART
PLAINTIFF'S REQUEST FOR DISCOVERY PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 56(d)**

### I. INTRODUCTION

This is a civil rights case brought pursuant to 42 U.S.C. § 1983 with pendent state-law claims. Plaintiff Deborah Ryan, in her individual capacity and as the representative of the estate of her daughter, Patricia "Katie" Williams, filed suit alleging that Defendants City of Detroit, Detroit police officers Dwane Blackmon and Barbara Kozloff, City of Canton, and Canton police officers Adam Falk and Mark Schultz failed to respond properly to a report made to the Canton Police Department ("CPD") of domestic violence committed by Ed Williams upon his wife, Katie Williams. Plaintiff alleges that Defendants' failure enabled Ed Williams to murder Katie Williams, both of whom were Detroit police officers. In her § 1983 claim alleging equal-protection violations against Canton police officers Falk and Schultz (collectively, for purposes of this opinion, "Defendants"), Plaintiff contends that Katie Williams was treated differently than other alleged victims of domestic violence because her assailant was a police officer.

Falk and Schultz move for summary judgment based on qualified immunity (Dkt. 122). For the reasons set forth below, the Court denies the motion for summary judgment without prejudice and orders additional discovery pursuant to Federal Rule of Civil Procedure 56(d).

## II. BACKGROUND

The Court addressed the factual and procedural background of this case in an Opinion and Order granting in part and denying in part a motion for summary judgment filed by the City of Canton, Falk, and Schultz. Ryan v. City of Detroit, et al., No. 11-10900, 2013 WL 5567475 (E.D. Mich. Oct. 19, 2013) (Dkt. 120). In that Order, the Court granted summary judgment to Canton, holding that Plaintiff had failed to establish a genuine issue of material fact whether Canton had a policy or custom of discriminating against victims of domestic violence whose assailants were police officers. Id. at *6-11. The Court also denied the motion without prejudice as to Falk and Schultz because, although they had invoked the defense of qualified immunity, they had failed to develop any argument with regard to Plaintiff's equal-protection claim. Id. at *11-12. To allow the issue to be properly presented to the Court, the parties stipulated to Defendants Falk and Schultz filing a second motion for summary judgment, 10/11/2013 Stipulated Order (Dkt. 121), the present motion before the Court.

In their submissions, the parties rely on the facts set forth in this Court's Order on the first motion for summary judgment. Defs.' Br. at 1; Pl.'s Resp. at 1. Therefore, the Court will not repeat the factual and procedural background set forth in its earlier opinion.

## III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

2

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the nonmovant." Id. (quotation marks and brackets omitted).

District courts also enjoy broad discretion to deny a summary judgment motion or grant a continuance to allow further discovery under Federal Rule of Civil Procedure 56(d). Glen Eden Hosp., Inc. v. Blue Cross and Blue Shield of Michigan, Inc., 740 F.2d 423, 428 (6th Cir. 1984) ("The language of Rule 56[d] makes it discretionary with a trial court whether to deny summary judgment in response to a motion seeking additional discovery."); Vild v. United States, 187 F.3d 651 (Table) (9th Cir. 1999) (holding that "a district court may refuse to grant a party's motion for summary judgment if the opposing party requires time to conduct additional discovery, and provides affidavits setting forth particular facts expected from the movant's discovery that would preclude summary judgment").

## IV. ANALYSIS

Plaintiff's equal protection theory is that Falk and Schultz failed to treat Katie Williams's report of domestic violence in the way that such reports are handled when the victim's assailant is not a police officer. Specifically, Plaintiff alleges numerous deviations from Michigan law and Canton police policy for investigating domestic violence cases, including the failure to: (i) write a domestic violence report as required by Mich. Comp. Laws § 764.15c, (ii) conduct a proper investigation by interviewing the assailant, and (iii) seek a warrant for his arrest. Instead, following receipt of an assurance by a Detroit police officer that Ed Williams's mental state was stable, the Canton officers did nothing further in regard to Katie Williams's report.

Defendants contend that summary judgment should be granted in their favor based on qualified immunity, arguing two central points: (i) they committed no constitutional violation, and (ii) there is no "clearly established right" of a domestic-violence victim assaulted by a police officer to be treated the same as a domestic-violence victim assaulted by a civilian. The first argument is premised on Plaintiff's failure to present any evidence that victims whose assailants are civilians are treated differently and thus, more favorably, than Katie Williams was treated.

As explained below, the Court agrees with Defendants that Plaintiff was obliged to present comparative evidence showing that persons victimized by non-police assailants have been treated more favorably. However, the Court agrees with Plaintiff that Defendants blocked Plaintiff's efforts during discovery to obtain precisely this evidence of disparate treatment. Accordingly, the Court will deny Defendants' motion for summary judgment without prejudice and grant Plaintiff's request for additional discovery. If a renewed summary judgment motion is filed, the Court will address the "clearly established right" issue at that time.

**A. Qualified Immunity Standard**

Qualified immunity prevents a plaintiff from recovering against a police officer in the officer's individual capacity, unless the plaintiff can (i) demonstrate a constitutional violation and (ii) show that the right infringed was clearly established such that a reasonable officer would have known that his conduct was unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009). A district court has discretion to determine the sequence in which to address the two prongs of qualified immunity. Grawey v. Drury, 567 F.3d 302, 309 (6th Cir. 2009). The Court determines that it is more appropriate in this case to address initially whether a constitutional violation occurred.

### B. Qualified Immunity Discussion

#### 1. Constitutional Violation

"To state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." Barrett v. Steubenville City Schs., 388 F.3d 967, 971 (6th Cir. 2004). The Equal Protection Clause of the U.S. Constitution prohibits discrimination by a government actor that (i) burdens a fundamental right, (ii) targets a suspect class, or (iii) "intentionally treat[s] one differently than others similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., 430 F.3d 783, 788 (6th Cir. 2005).

Plaintiff's invocation of differential treatment is flawed, according to Defendants, because Plaintiff has not demonstrated that Katie Williams was treated any differently than any other domestic-violence victim. Defs.' Br. at 3-13. Defendants argue that "[n]owhere does Plaintiff show any comparison to other domestic violence victims to show a discrepancy in arrest rates, nor does she show that Officers Schultz and Falk failed to arrest Mr. Williams as a means

of intentionally discriminating against the decedent." Id. at 5. The Court agrees with Defendants on the law and the current state of the record.

Defendants are correct in arguing that an equal-protection plaintiff, in opposition to a motion for summary judgment, has the "burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." S.S. v. E. Ky. Univ., 532 F.3d 445, 457-458 (6th Cir. 2008). Courts routinely look for comparative evidence to evaluate an equal-protection claim and reject equal-protection claims without comparative evidence. Loesel v. City of Frankenmuth, 692 F.3d 452, 465 (6th Cir. 2012) (in zoning ordinance dispute, analyzing whether plaintiff's property was treated less favorably than two other properties); TriHealth, 430 F.3d at 789-790 (summarizing comparative evidence between hospitals where plaintiff alleged that it was treated unfairly compared to other facilities); Daley v. Charter Twp. of Chesterfield, No. 11-12562, 2012 WL 1721671, at *26 (E.D. Mich. May 16, 2012) ("Plaintiff has not come forward with evidence that similarly-situated residents were treated differently than him, and this is an essential element of his Equal Protection claim."); Carpman Fitness, LLC v. City of Royal Oak, 681 F. Supp. 2d 836, 841-843 (E.D. Mich. 2009) (finding insufficient evidence of differential treatment of business licensing, where evidence consisted of an affidavit and a deposition relating to one other business, which the court found inapposite); see Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) ("Plaintiffs fail to make any comparison to similarly situated groups, and, read broadly, the Amended Complaint alleges injury to nearly all Americans."). See also Heike v. Guevara, 519 F. App'x 911, 920-921 (6th Cir. 2013) (holding that, in race-discrimination case, plaintiff's equal-protection claim failed because plaintiff "produce[d] no evidence that she was treated differently than another player" and plaintiff could not "establish that others who were similarly situated, but members of a

different race, were treated more favorably"); Benson v. Brunette, 12-cv-10095, 2013 WL 1283476, at *1 (E.D. Mich. Mar. 28, 2013) ("Plaintiff's equal protection claim is unavailing as he does not present any evidence that prison officials treated him differently from similarly situated white inmates.").

The same requirement for a comparative analysis is enunciated in cases arising in the domestic-violence and police-investigation context. See, e.g., Blankenship v. City of Cleveland, 145 F.3d 1330, at *2 (Table) (6th Cir. 1998) (on interlocutory appeal by four individual officers from district court's denial of qualified immunity for equal-protection violations, holding that the "plaintiff's evidence concerning [a] single episode [of domestic violence] cannot support an equal protection claim against" the police officers because of (i) "the absence of evidence that the situation these individual [police officers] confronted was substantially similar to other violent felonious episodes and should be treated the same" and (ii) the lack of "any evidence of a pattern or course of conduct by the [police officers] in dealing with violent episodes"); Mata v. City of Kingsville, 275 F. App'x. 412, 415-416 (5th Cir. 2008) (holding that plaintiff, a police officer's wife complaining of less favorable treatment of her report of domestic abuse than non-police wives' complaints, could not establish equal-protection claim where the record lacked comparative evidence of disparate treatment); Hakken v. Washtenaw Cnty., 901 F. Supp. 1245, 1253-1254 (E.D. Mich. 1995) (denying motion for summary judgment on equal-protection claim without prejudice so that plaintiff could present statistical evidence of disparate treatment of abuse complaints).

Plaintiff does set forth significant evidence that Katie Williams's report of domestic violence was not addressed in conformity with Michigan law or CPD policy. For instance, Plaintiff has presented evidence that Defendants ignored the Michigan statute mandating certain

7

police actions following a domestic violence complaint, Mich. Comp. Laws § 764.15c. Pl.'s Resp. at 12-15. That statute requires officers to provide a victim of domestic violence with written notice of her rights, prepare a specifically titled "domestic violence report," and send a copy of the report to the local prosecutor. Mich. Comp. Laws § 764.15c(1)-(3). Falk did not write a domestic violence report, as required by Mich. Comp. Laws § 764.15c, and nothing was sent to the local prosecutor. Instead, he wrote a report that characterized his interaction with Katie Williams as a "civil matter" that was "closed, for documentation only at this time." 9/20/2009 Falk Report (Dkt. 123-5). Falk considered this a "cover our ass thing," in case "something really serious happens." Video Tr. at 9, 17 (Dkt. 106–3). Falk also did not follow the dictates of the statute or initiate any criminal investigation.

Schultz also did not follow the requirements of § 764.15c after he became involved. He did initiate a Law Enforcement Information Network ("LEIN") alert on Ed Williams, but set the information to indicate that Ed Williams was a missing person, rather than a suspect in a domestic violence investigation. LEIN Alert (Dkt. 106-6).

Further, although Schultz spoke with Ed Williams on the phone, he did not question him regarding domestic violence and gave him the option to check in either with a supervisor at the Detroit Police Department ("DPD") or come to the CPD headquarters. Schultz Dep. at 45, 83 (Dkt. 123-9). Schultz told Ed Williams about the LEIN alert and said that it would be removed after he had checked-in. Id. Schultz did speak with DPD police officer Barbara Kozloff, and let her know that Ed Williams's mental state had to be ascertained; but Kozloff testified that no one told her about the domestic violence incident, and she was not told to make an arrest when Ed Williams came to DPD. Schultz Dep. at 92; Kozloff Dep. 41, 49, 55 (Dkt. 107-11). Defendants also admitted that once Kozloff told Schultz that "all was well" with Ed Williams, CPD

8

"considered the matter closed" and in the hands of DPD. Defs.' First Br. for Summ. J. at 2, 16 (Dkt. 93).

Similarly, Plaintiff has presented evidence that Defendants deviated from CPD's Domestic Intervention Operations (DIO) policy. Pl.'s Resp. at 15-17. That policy requires officers to, among other things, interview the husband and wife in a domestic violence investigation, ignore the wishes of either party concerning prosecution, disregard the occupation of either party, and attempt to locate and arrest the suspect if the suspect has left the scene. DIO Policy at 7, 9 (Dkt. 123-10). Falk did not attempt to interview or locate Ed Williams, and he appears to have acceded to Katie Williams's desire not to get her husband in trouble when she complained about domestic violence and requested an escort to her home. Video Tr. at 10-11. Schultz also did not interview Ed Williams about the incident when he spoke to him, nor did Schultz attempt to locate or arrest him. Plaintiff's evidence clearly indicates that Falk and Schultz did not follow the policy of their police department for domestic-violence complaints.

These police failures are unquestionably troubling. But what is missing from the record is any evidence showing that these officers did not act in a similar fashion in other domestic violence cases when the assailants were not police officers. Plaintiff's § 1983 claim is not police malpractice, but the unequal protection of the laws. To support that claim, she must provide comparative evidence establishing differential treatment. To date, the record is barren of such evidence.[1]

---

[1] Plaintiff appears to take the position that by proceeding under a class-of-one theory, she can avoid the need for comparative evidence and merely introduce evidence that Defendants allegedly failed to adhere to Michigan law or to follow CPD's procedure. See Pl.'s Resp. at 12-24. Plaintiff is mistaken. In a class-of-one theory, a plaintiff asserts that she is the victim of discriminatory treatment, even though she is the only member of the class. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). But even a class-of-one plaintiff must show differential treatment by comparison to others who are treated more favorably. TriHealth, Inc. v.

Were the Court's analysis to stop here, summary judgment would be awarded to Defendants. However, as explained below, Plaintiff has properly requested that summary judgment be denied without prejudice because Defendants objected during discovery to producing the information that Plaintiff needs to establish her case, characterizing as irrelevant what they now assert is essential.

### 2. Plaintiff's Request Pursuant to Federal Rule of Civil Procedure 56(d)

Plaintiff argues that she cannot bring forth comparative evidence because Defendants objected to her discovery requests. Pl.'s Resp. at 8-9. Plaintiff requests that the Court deny Defendants' motion without prejudice pursuant to Federal Rule of Civil Procedure 56(d), so that she can obtain the discovery she needs. In support of this argument, Plaintiff's counsel attached a declaration that states that Plaintiff has requested pertinent documents, but that Defendants objected on the grounds that the requested information was irrelevant. William H. Goodman Aff. (Dkt. 123-3). These requests sought various police reports involving Falk, Schultz, and the CPD relating to domestic-violence investigations.[2] See id.

---

Bd. of Comm'rs, Hamilton Cnty., 430 F.3d 783, 789-790 (6th Cir. 2005) (summarizing comparative evidence between hospitals where plaintiff alleged that it was treated unfairly in distribution of county founds compared to other facilities); Loesel v. City of Frankenmuth, 692 F.3d 452, 465 (6th Cir. 2012) (comparing treatment of plaintiff's property to the treatment of two other properties in zoning ordinance case); Bunn v. City of Poughkeepsie, No. 10 Civ. 2297(PAE), 2012 WL 1621563, at *3 (S.D.N.Y. May 9, 2012) (holding that class-of-one claim requires the "plaintiff to adduce evidence demonstrating that he was, in fact, treated differently from similarly situated comparators"). Thus, a class-of-one theory does not cure Plaintiff's failure to provide required comparative evidence.

[2] In particular, there were six requests seeking "[a]ny and all documentation and records" of "domestic violence incidents," including "incident reports, Call For Service reports, Other Service reports, Crime Scene reports, Crime reports, Follow-Up reports and any and all other reports and other investigative documents." Defs.' Resp. to Pl.'s Req. for Prod. at 2 (Dkt. 123-2). Requests 1 and 2 sought documents that related to (i) all domestic violence incidents occurring in Canton Township and (ii) domestic violence incidents that occurred in Canton Township, but had a suspect that was a law enforcement officer. Id. at 2. Requests 3 and 4 sought documents regarding domestic violence incidents, where (i) Schultz participated in the

10

Federal Rule of Civil Procedure 56(d) allows a court to deny a summary judgment motion or grant a continuance in order to allow further discovery.[3] To establish the need for discovery material to respond to a summary judgment motion, the nonmovant must do more than make vague allegations or conclusory statements regarding the need for such discovery. Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003) ("Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing."). The nonmovant bears the burden of demonstrating that adequate discovery has not occurred. Id. In doing so, the nonmovant should address what "additional facts and information obtained through discovery may disclose facts material to the issues presented in the pending motion." Hayes Lemmerz Int'l., Inc. v. Epilogics Grp., No. 03-CV-70181-DT, 2007 WL 2983999, at *2 (E.D. Mich. Oct. 12, 2007); see York v. Tenn. Crushed Stone Assoc., 684 F.2d 360, 363 (6th Cir. 1982) (holding that re-opening discovery was not warranted because of lack of good cause); England v. Advance Stores Co. Inc., 263 F.R.D. 423, 432 (W.D. Ky. 2009) ("When the time period allocated for discovery has expired at the time the party opposing the motion files its brief in response, the respondent must demonstrate good cause to invoke the rule."). The declaration required by Rule 56(d) "must indicate the need for discovery, what material facts may be

---

investigation and the incident had a law-enforcement suspect and (ii) Schultz participated in the investigation and the incident did not have a law-enforcement suspect. Id. at 3. Requests 5 and 6 sought similar information as requests 3 and 4, but targeted investigations involving Falk. Id. at 4. Defendants objected to each of these requests for production, arguing that they were "irrelevant, unduly burdensome, overly broad, and not reasonably calculated to lead to any discoverable evidence." Id. at 2-4.

[3] The rule provides for the following:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

uncovered, and why the information has not been previously discovered." Egerer v. Woodland Realty, Inc., 556 F.3d 415, 426 (6th Cir. 2009).

Courts consider several factors when ruling on a Rule 56(d) request, including (i) when the nonmovant learned of the issue that is the subject of discovery, (ii) how the discovery would affect the ruling, (iii) the length of the discovery period, (iv) whether the nonmovant was dilatory, and (v) whether the movant was responsive to prior discovery requests. Audi AG v. D'Amato, 469 F.3d 534, 541 (6th Cir. 2006).

Here, Plaintiff's counsel's Rule 56(d) declaration recounts that Defendants objected to document production requests from Plaintiff during discovery. Goodman Aff. ¶ 7; see Defs.' Resp. to Pl.'s Req. for Prod. Plaintiff's counsel explains that such evidence is "vital" to Plaintiff's claims, but that Defendants have not provided it. Goodman Aff. ¶ 9. Plaintiff has not made vague allegations or conclusory statements regarding the need for additional discovery. Lanier, 332 F.3d at 1006.

In considering the relevant Rule 56(d) factors under Audi, the Court determines that the factors tip in Plaintiff's favor. With regard to being aware of the issue at hand, Plaintiff sought the reports and documentation during the now-concluded discovery phase of this case. Audi, 469 F.3d at 541. But that early awareness of the issue cannot be held against Plaintiff, and her failure to file a motion to compel cannot be viewed as dilatory. Defendants' relevance objection appears to have lulled Plaintiff into thinking Defendants would not insist on comparative evidence – a position Defendants reversed on summary judgment.

With regard to how the discovery would affect the ruling, this factor is virtually dispositive of Plaintiff's requests concerning Falk and Schultz. Id. With Defendants having now pivoted 180 degrees, by asserting in the instant motion that the lack of comparative evidence is

12

fatal to Plaintiff's equal-protection claim, additional reports or documentation obtained through discovery may disclose "facts material to the issues presented in the pending motion." Hayes, 2007 WL 2983999, at *2.[4]

The Court is cognizant that one of the purposes of qualified immunity is "to protect [officers] from the rigors of litigation itself, including the potential disruptiveness of discovery." Everson v. Leis, 556 F.3d 484, 591 (6th Cir. 2009). In this case, however, there already has been substantial discovery, with Falk and Schultz having been deposed. Additional discovery, consisting of the production of the reports and documents requested by Plaintiff, is not going to be a significant burden in comparison to what has already transpired. Thus one of the purposes of qualified immunity – to avoid enmeshing officers in litigation – will not be frustrated.

Finally, additional discovery will not delay the resolution of this case. This case is not currently ready for trial, as the related claims against the City of Detroit and its police officers have been stayed due to the City of Detroit bankruptcy. If there is to be a trial, all claims should be tried together, after the bankruptcy stay is lifted. Therefore, additional discovery will not interfere with the expeditious adjudication of this case.

Considering all these factors, the Court grants Plaintiff's request for more discovery, in part. Defendants are to provide documents and reports responsive to requests 3 through 6.[5]

---

[4] The other Audi factors – length of the discovery period and Defendants' responsiveness to other discovery requests – pale in comparison to the importance of the discovery.

[5] The Court agrees with Defendants' overbreadth objection to requests 1 and 2 because they do not target the domestic violence investigations of Falk and Schultz. Therefore, the Court will not compel discovery responsive to those requests. The Court rejects the burdensome and overbreadth objections to requests 3 through 6 because these objections are unsubstantiated. Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the [request] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to [a request]. On the contrary, the party resisting discovery must show specifically how each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.") (quotation marks and ellipsis omitted); Ford Motor Co. v. United States, No. 08-

13

### 3. Clearly Established Right

The Supreme Court has provided this Court with discretion in sequencing the qualified immunity analysis. Pearson, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Because additional discovery is being ordered, there is no need at this time to reach the constitutional issue whether a domestic-violence victim has a right to be treated by police without regard to the police affiliation of her assailant and whether that right was clearly established at the time of Katie Williams's report in 2009. And if Plaintiff is unable to locate evidence of disparate treatment, these issues will be moot. Courts have traditionally avoided unnecessary constitutional decision-making. See, e.g., Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The Court will, therefore, not address the "clearly established right" prong of the qualified immunity analysis at this time.[6]

### V. CONCLUSION

For the reasons stated above, the Court denies Defendants' motion for summary judgment without prejudice pursuant to Federal Rule of Civil Procedure 56(d). Defendants shall

---

12960, 2009 WL 2922875, at *2 (E.D. Mich. Sept. 9, 2009) (rejecting the defendant's assertion that producing requested documents would be "unduly burdensome" because the defendant did not assert the ground for its opposition with specificity).

[6] The Court also does not address whether Defendants' actions may be supported by a rational basis. The issue was not raised in Defendants' opening brief and is not properly raised for the first time in Defendants' reply brief. Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002); Peake v. Nat'l City Bank of Michigan, No. 05-72520, 2007 WL 951417, at *3 (E.D. Mich. Mar. 27, 2007) ("An argument raised for the first time in a reply brief is not to be considered by the court."). A more orderly presentation, as part of Defendants' opening brief in a new summary judgment motion, if any is filed, will facilitate a clearer presentation of the parties' views.

provide the responsive discovery material Plaintiff requested in her First Request for Production of Documents limited to requests 3 through 6 within 30 days of this Opinion and Order. The Court will entertain a renewed motion for summary judgment pursuant to the administrative closing order being entered this day.

    SO ORDERED.

Dated: December 19, 2013                          s/Mark A. Goldsmith
      Flint, Michigan                        MARK A. GOLDSMITH
                                            United States District Judge

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 19, 2013.

                                             s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager