UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RYAN,

    Plaintiff,

Case No. 11-CV-10900

v.

HON. MARK A. GOLDSMITH

CITY OF DETROIT, et al.,

    Defendants.

_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS FALK AND
SCHULTZ'S MOTION FOR SUMMARY JUDGMENT (Dkt. 148)**

## I.  INTRODUCTION

This is a civil rights case brought pursuant to 42 U.S.C. § 1983.  Plaintiff Deborah Ryan, in her individual capacity and as the representative of the estate of her daughter, Patricia "Katie" Williams, filed suit alleging that Defendants City of Detroit, Detroit police officers Dwane Blackmon and Barbara Kozloff, City of Canton, and Canton police officers Adam Falk and Mark Schultz failed to respond properly to a report made to the Canton Police Department ("CPD") of domestic violence committed by Ed Williams upon his wife, Katie Williams.  Plaintiff alleges that Defendants' failure enabled Ed to murder Katie, both of whom were Detroit police officers.  In her section 1983 claim alleging equal-protection violations against Falk and Schultz (collectively, for purposes of this decision, "Defendants"), Plaintiff contends that Katie was treated less favorably than other alleged victims of domestic violence because her assailant was a police officer.

This matter is presently before the Court on Defendants' third motion for summary judgment based on qualified immunity (Dkt. 148).  Briefing has been completed, and oral

1

argument was held on December 15, 2014. As explained fully below, the Court concludes that Plaintiff has erroneously advanced a class-of-one theory in support of her equal-protection claim, when, at most, the only arguably viable legal theory to support this claim would be a traditional equal-protection theory. Because the briefing by all parties fails to address this theory, the Court cannot determine at this time whether Defendants are entitled to a judgment disposing of the entirety of Plaintiff's equal-protection claim. Accordingly, the Court grants Defendants' motion in part and denies it in part.

## II. BACKGROUND

The Court addressed the factual and procedural background of this case in an Opinion and Order granting in part and denying in part a motion for summary judgment filed by the City of Canton, Falk, and Schultz. See Ryan v. City of Detroit, 977 F. Supp. 2d 738, 741-745 (E.D. Mich. 2013). In their submissions, the parties rely, in part, on the facts set forth in that decision. Defs. Br. at 1; Pl. Resp. at 1-2 (Dkt. 150). They also rely on additional facts developed during discovery, but such facts do not bear on the issue upon which this decision is based. Therefore, the Court will not repeat the factual and procedural background set forth in its earlier decision, nor recite the newly adduced facts.

In its decision on the first motion, the Court granted summary judgment to Defendant Canton, holding that Plaintiff had failed to establish a genuine issue of material fact that Canton had a policy or custom of discriminating against victims of domestic violence whose assailants were police officers. Ryan, 977 F. Supp. 2d at 746-752. The Court also denied the motion without prejudice as to Defendants Falk and Schultz because, although they had invoked the defense of qualified immunity, they had failed to develop any argument with regard to Plaintiff's equal-protection claim. Id. at 752-753. To allow the issue to be properly presented to the Court,

the parties stipulated to Falk and Schultz's filing of a second motion for summary judgment. 10/11/2013 Stipulated Order (Dkt. 121).

In their second motion for summary judgment (Dkt. 122), Falk and Schultz argued that Plaintiff failed to demonstrate that Katie was treated differently than any other domestic-violence victim. See Ryan v. City of Detroit, No. 11-CV-10900, 2013 WL 6730051, at *3 (E.D. Mich. Dec. 19, 2013). More specifically, Defendants argued that Plaintiff did not "show any comparison to other domestic violence victims to show a discrepancy in arrest rates, nor [did] she show that [Defendants] failed to arrest Mr. Williams as a means of intentionally discriminating against the decedent." Id. The Court agreed, holding that Plaintiff "must provide comparative evidence establishing differential treatment." Id. at *5. Nonetheless, the Court denied the second motion for summary judgment without prejudice, in order for Plaintiff to conduct further discovery and present comparative evidence. Id. at *7-8. The Court noted that it would entertain a renewed motion for summary judgment, id. at *8, which is now presently before the Court.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

3

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004). The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (quotation marks omitted). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 447 U.S. at 252.

### IV. ANALYSIS

Government officials, including law enforcement officials, are generally shielded from civil liability when performing discretionary functions, unless their conduct violates a clearly established statutory or constitutional right such that a reasonable officer would have known that his or her conduct was unlawful. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pearson v. Callahan, 555 U.S. 223, 232 (2009) (same). Once a defendant raises qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to such immunity. Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013).

In opposing Defendants' claim of qualified immunity, Plaintiff must show the following: (i) Defendants violated a constitutional or statutory right based on the facts alleged, and (ii) the

4

right was clearly established. Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)). If Plaintiff is unable to establish the violation of a constitutional or statutory right, the Court's inquiry ends and Defendants are entitled to immunity. Perez v. Oakland Cnty., 466 F.3d 416, 426-427 (6th Cir. 2006), cert. denied, 552 U.S. 823 (2007).

Defendants contend that summary judgment should be granted in their favor based on qualified immunity, arguing two central points: (i) they committed no constitutional violation because there was no differential treatment, as compared to similarly situated individuals; and (ii) there is no "clearly established right" of a domestic-violence victim assaulted by a police officer to be treated the same as a domestic-violence victim assaulted by a civilian. Plaintiff responds by asserting that the evidence supports a class-of-one theory. The Court concludes that Plaintiff has not identified sufficient evidence to show a constitutional violation based on a class-of-one theory. However, the Court cannot rule on a traditional equal-protection theory, because that theory is not addressed in the parties' briefing.

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under the color of state law deprived the plaintiff of a constitutional right. West v. Atkins, 487 U.S. 42, 48 (1988); Harris v. City of Circleville, 583 F.3d 356, 364 (6th Cir. 2009) (same). The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government that "'burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" Loesel v. City of Frankenmuth, 692 F.3d 452, 461 (6th Cir. 2012) (quoting Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 681-682 (6th Cir. 2011)); see also Davis v. Prison Health Servs., 679 F.3d 433, 438 (6th Cir. 2012) ("The Equal Protection Clause of the Fourteenth Amendment

5

'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.'" (quoting Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006))).

Plaintiff does not contend either that a fundamental right has been burdened or that Katie belonged to a suspect class. Rather, Plaintiff premises her equal-protection claim on a class-of-one theory, as recognized by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) and Enquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008). See Pl. Resp. at 21 (Dkt. 150) (stating that the theory "at issue in the present case[] is known as the 'class of one' theory."). However, having reviewed Plaintiff's arguments pertaining to her purported theory of the case, the Court finds that the equal-protection claim at issue is properly characterized as a traditional, class-based discrimination claim — not a class-of-one claim.

In Davis, the Sixth Circuit sought to clarify the apparent confusion that has led some courts to conclude that, if an equal-protection claim does not allege that government action has targeted a suspect class or burdened a fundamental right, the claim must be a "class-of-one" claim. 679 F.3d at 440. The court suggested that confusion likely stemmed from language in Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby, Michigan, 470 F.3d 286 (6th Cir. 2006), which stated that, "[w]hen a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called 'class of one' theory and must prove that the government's actions lacked any rational basis." Davis, 679 F.3d at 440-441 (quoting Club Italia, 470 F.3d at 298). According to the Davis court, "suggest[ing] that every claim subject to rational basis review is a 'class-of-one' claim" was erroneous. Id. at 441. The court went on to explain that, while "all

'class-of-one' claims are subject to rational basis review, not all claims subject to rational basis review are 'class-of-one' claims." Id.

The Davis court then proceeded to differentiate between "typical" or "traditional" equal-protection cases, in which plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group,'" id. (quoting Enquist, 553 U.S. at 601), and "class-of-one" equal-protection cases, in which "the plaintiff does not allege membership in a class or group but rather simply alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (brackets and quotation marks omitted). The Sixth Circuit explained that the hallmark of a class-of-one claim is "the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." Id. (quotation marks omitted); see id. (citing and quoting Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily." (emphasis in original))).

Other circuits agree that class-of-one claims are restricted to instances where the government intentionally singles out a specific victim for differential treatment, regardless of the victim's membership in an identifiable group. See, e.g., United States v. Moore, 543 F.3d 891, 896 (7th Cir. 2008) ("[I]ndividuals pursuing equal protection challenges ordinarily allege that they have been arbitrarily classified as members of an identifiable group. In contrast, a class-of-one equal protection challenge asserts that an individual has been irrationally singled out, without regard to any group affiliation, for discriminatory treatment." (quotation marks omitted)); see also SECSYS, LLC v. Vigil, 666 F.3d 678, 688 (10th Cir. 2012) ("Class of one

7

doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual.").

In contrast, for a traditional, class-based equal-protection claim, a plaintiff must demonstrate that the government arbitrarily classified him or her as a member of an "identifiable group." Davis, 679 F.3d at 441; Jennings v. City of Stillwater, 383 F.3d 1199, 1213 (10th Cir. 2004) ("Traditional equal protection law deals with groups unified by the characteristic alleged to be the root of the discrimination."). In determining whether a group is identifiable for traditional equal-protection purposes, the Eleventh Circuit has provided the following overview:

> For a group to qualify properly as identifiable for the purposes of an Equal Protection Clause claim, substantive group characteristics must pop out that allow [courts] to separate readily entities or people into discrete groupings and clearly identify those persons that suffered the alleged discrimination and those persons that did not. Many substantive characteristics of this kind exist that allow for separation of entities or people into discrete groupings and that could potentially support an Equal Protection Clause claim. Groups based on race, sex, or even longer-term and discrete political affiliation — Republican as opposed to non-Republican or Democrat as opposed to non-Democrat — all potentially allow courts to identify clearly the parties involved, separate the parties into strongly defined groupings, and discern the existence of an identifiable group whose members may have suffered discrimination.
>
> \* \* \*
>
> For a group to qualify properly as identifiable for purposes of a group-based discrimination claim, the group must be identifiable by some common set of traits that reach beyond simply not having been selected for a benefit or sharing a desire to do something which the allegedly discriminating party does not want them to do.

Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1297-1298 (11th Cir. 2012).

8

In the present case, Plaintiff argues that Defendants treated Katie differently because her assailant was a police officer. Pl. Resp. at 7; Am. Compl. ¶¶ 62, 63 (Dkt. 59). More specifically, Plaintiff claims that, in cases involving victims of domestic violence whose assailants were not police officers, Defendants: (i) either arrested or requested an arrest warrant for the suspect within 24 hours; (ii) did not consider the suspect's occupation when determining whether or not to proceed with a case; (iii) ignored the wishes of the victim to not investigate or arrest the suspect; (iv) completed domestic violence incident reports; and (v) attempted to locate and interview the suspect. Pl. Resp. at 9-16. Plaintiff argues that the reason Defendants failed to follow any of these practices in Katie's case was because her assailant was a police officer. Id. at 19-20. These claimed distinctions are the essential predicates for Plaintiff's equal-protection claim. Id.

In connection with these distinctions, it is clear that Plaintiff does not allege that Defendants treated Katie differently, as an individual, without regard to her membership in an identifiable group. Rather, Plaintiff claims that Katie was treated differently because of her membership in an identifiable group — namely, victims of domestic violence whose assailants were police officers. It is the assailant's employment as a police officer that is the common trait or characteristic that makes this group identifiable for purposes of Plaintiff's equal-protection claim. The Court can readily determine whether an individual belongs to one group (victims whose assailants are police officers) or another group (victims whose assailants are not police officers). Because there is no evidence that Katie was singled out without regard to a group affiliation, Plaintiff has failed to establish an essential prerequisite for a class-of-one equal-protection claim.

This conclusion, however, does not mandate that the Court grant judgment disposing of Plaintiff's equal-protection claim in all respects. When a ruling disposes of only part of a claim, an award of partial summary judgment may be entered. See Slate v. Byrd, No. 1:09cv852, 2013 WL 2474336, at *2 (M.D.N.C. June 10, 2013) (granting summary judgment in part, but denying it as to bases of liability not specifically addressed in the briefing). Because the parties have prepared briefs under an incorrect theory — leaving a theory that Plaintiff may or may not choose to advance[1] — it would be in the interest of justice to grant Defendants' motion only as to the non-viable theory and allow Defendants to file a new motion for summary judgment, targeting the only arguably viable equal-protection theory, should Plaintiff choose to pursue it.[2] The Court's flexibility in allowing Plaintiff to refine her theory and in permitting yet another summary judgment motion is justified, based on the confusion in this area of the law caused by the Sixth Circuit, which that court recognized in Davis.

In connection with any new motion that may be filed, Defendants' counsel are admonished not to repeat the errors and deficiencies contained in the current briefing. One glaring error is Defendants' raising of issues for the first time in their reply brief. Specifically,

---

[1] As explained below, the Court will give Plaintiff an opportunity to elect not to proceed under a traditional equal-protection theory, if that is her preference. In such event, the Court will modify this Opinion and Order and grant Defendants' current motion for summary judgment in full.

[2] For a traditional, non-suspect-class-based equal-protection claim premised on a facially neutral decision of a government official, a plaintiff must satisfy the following elements: (i) the plaintiff is a member of an "identifiable group," Davis, 679 F.3d at 441; (ii) the plaintiff was treated differently by the defendant, Arabo v. Greektown Casino, LLC, 553 F. App'x 492, 494 (6th Cir. 2014); (iii) the plaintiff was similarly situated to other individuals who are not members of the group but received different treatment than the plaintiff, see S.S. v. E. Ky. Univ., 532 F.3d 445, 457-458 (6th Cir. 2008); (iv) the defendant had the intent or purpose to discriminate, McCleskey v. Kemp, 481 U.S. 279, 298 (1987); and (v) there was no rational basis for defendant's actions. See Liberty Coin, LLC v. Goodman, 748 F.3d 682, 694 (6th Cir. 2014). Although there is significant overlap between a traditional equal-protection theory and a class-of-one theory, the parties may approach the briefing differently based on the theory that is actually offered. Further, the evidence in favor of, or against, summary judgment may vary depending on the theory that is being set forth.

the issue of "rational basis" was not addressed at all by Defendants until they filed their reply brief. And this is not the first instance of such conduct. Defendants committed the same error in connection with their second motion for summary judgment, and with regard to the very same issue. Indeed, the Court expressly pointed out that error in the decision disposing of that earlier motion:

> The Court also does not address whether Defendants' actions may be supported by a rational basis. The issue was not raised in Defendants' opening brief and is not properly raised for the first time in Defendants' reply brief.

Ryan, 2013 WL 6730051, at *7 n.6. Why Defendants would commit the same error again is inexplicable. In a similar vein, Defendants deferred full treatment of the "similarly situated" issue until their reply brief, having devoted only a one-sentence reference to it in their opening brief. A terse reference in an opening brief to an issue that is of obvious significance does not provide "cover" for deferring full treatment of the issue until the reply; such gamesmanship is patently unfair to the opposing party. If defense counsel commit these errors again, the Court will entertain sanctions.

## V. CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment (Dkt. 148) only as to Plaintiff's class-of-one theory; in all other respects, the motion is denied without prejudice. If Plaintiff does not seek to advance a traditional equal-protection theory in this case, she shall file a memorandum to that effect on or before April 1, 2015. If no memorandum to that effect is filed, Defendants may file a new summary judgment motion based on a traditional equal-protection theory on or before April 22, 2015, raising all of the issues upon which Defendants urge a grant of summary judgment relative to a traditional equal-protection

11

theory. Such issues must be raised in Defendants' opening brief and may not be relegated to a reply brief.

Defendants' motion and brief shall not exceed 30 pages combined (exclusive of attachments) and shall not incorporate by reference portions of any earlier-filed briefs; instead, all facts, arguments, and authorities must be set forth explicitly in the new briefing. Plaintiff shall file a response and brief, limited to 30 pages combined (exclusive of attachments), on or before May 13, 2015. Plaintiff's brief must set forth all facts, arguments, and authorities in opposition to summary judgment and may not incorporate by reference portions of any earlier-filed briefs. Defendants may file a reply brief, not to exceed 7 pages (exclusive of attachments), on or before May 30, 2015, which shall not raise any new issue. The parties are reminded that Local Rule 5.1 has been amended, setting forth new formatting requirements for filings. Non-compliant documents will be struck.

Should Plaintiff file a memorandum stating that she is not advancing a traditional theory of equal protection, the Court will modify this Opinion and Order and grant full summary judgment to Defendants on Plaintiff's equal-protection claim.

SO ORDERED.

Dated: March 25, 2015      s/Mark A. Goldsmith
    Detroit, Michigan     MARK A. GOLDSMITH
      United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2015.

    s/Carrie Haddon
    Case Manager